An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-483

Filed 3 September 2025

Wake County, No. 20CR206873-910

STATE OF NORTH CAROLINA

v.

CHRISTOPHER DESHAWN JUDD, Defendant.

Appeal by Defendant from judgment entered 29 August 2023 by Judge Claire Hill in Wake County Superior Court. Heard in the Court of Appeals 26 February 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Gina M. Von Oehsen Cleary, for the State.*

> *Vitrano Law and Mediation, by Sean P. Vitrano, for Defendant-Appellant.*

CARPENTER, Judge.

Christopher Judd ("Defendant") appeals from judgment entered after a jury found him guilty of common-law robbery. On appeal, Defendant asserts the trial court erred by denying his request for a jury instruction on a claim-of-right defense. Because of Defendant's failure to establish a bona fide belief of entitlement and the strong evidence of felonious intent, we discern no error.

## I.     Factual & Procedural Background

In August 2020, Wake County grand juries indicted Defendant for one count of common-law robbery and attaining habitual felon status. On 28 August 2023, Defendant's case proceeded to trial, and the evidence tended to show the following.

On 13 April 2020, Defendant assaulted and robbed Willie Wilson, a 73-year-old retired schoolteacher, at a Walmart in Raleigh, North Carolina. Earlier that month, Wilson met Defendant through a mutual friend. One day, Defendant and his mutual friend visited Wilson's house. While there, Defendant remarked that Wilson's landscaping "look[ed] terrible," suggested that Wilson could use some help with his yard, and offered to assist. Wilson responded, "[w]ell, I'm going to think about it," and "I'll get back with you later on. I'll think about it." Defendant did not have a phone or other reliable means of communication.

The next day, Defendant showed up unannounced at Wilson's front door. Wilson gave Defendant a chance, and he proceeded to trim Wilson's hedges and clean his gutters. Upon completion, and without negotiating compensation, Wilson paid Defendant $40. For the next few days, Defendant continued to arrive and do yardwork without prior notice. Although Wilson had not offered work or compensation beforehand, Wilson paid Defendant a total of $85 for his additional work.

Frustrated by Defendant's repeated, unannounced visits, Wilson agreed to buy Defendant a $29 phone he had seen in an advertisement. On 13 April 2020, Wilson

took Defendant to a Walmart to purchase the phone so Defendant could call ahead instead of arriving unannounced. When Wilson learned the $29 phone was out of stock, Defendant suggested Wilson purchase a more expensive model, but Wilson declined. Defendant became angry, attempted to strike Wilson with a shopping cart, and followed him into the parking lot, where Defendant physically assaulted Wilson.

Walmart's surveillance footage showed Defendant punching Wilson multiple times in the parking lot outside the store. After viewing the footage in open court, Officer William Faircloth of the Raleigh Police Department testified about the events reflected in the footage:

> It showed the two after they exited the store, . . . it appears that [Defendant] at that point punches the victim numerous times after the first punch, and then it appears that he takes something from his person and removes it from his person, and then it appears as if an item is discarded back in the direction of the victim as he lays in the parking lot.

After the assault, a Walmart employee came to Wilson's aid and advised him to check his wallet. Wilson discovered $150 was missing.

During the charge conference, defense counsel requested additional instructions on Defendant's claim-of-right defense and on the lesser-included offense of simple assault. The trial court reviewed Defendant's proposed instructions on common-law robbery and intent, referencing the North Carolina Pattern Jury Instructions. The claim-of-right instruction, found in footnote 4 of the North Carolina

Pattern Jury Instructions,[1] provides that: "[i]n the event that a defendant relies on a claim-of-right, the jury should be told that if the defendant honestly believed he was entitled to take the property, he cannot be guilty of robbery." N.C.P.I.-CRIM. 217.10 n.5 (2023).

The trial court granted Defendant's request to instruct on simple assault, a lesser-included offense to common-law robbery, but denied his request for a claim-of-right instruction, stating "[i]n my discretion . . . I don't feel there is sufficient evidence for [a claim-of-right instruction] . . . ." The jury found Defendant guilty of common-law robbery. Defendant also pleaded guilty to attaining habitual felon status and stipulated to one aggravating factor at sentencing. The trial court sentenced Defendant to a minimum of 135 and a maximum of 174 months in the custody of the Department of Adult Correction. Defendant gave notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III.    Issue

The sole issue is whether the trial court erred by denying Defendant's request for a jury instruction on a claim-of-right defense.

---

[1] Defense counsel and the trial court referred to this instruction as footnote 4, which was accurate at the time of trial. In the most recent version of the North Carolina Pattern Jury Instructions, however, the relevant language appears in footnote 5. *See* N.C.P.I.-Crim. 217.10 n.5 (2023).

## IV.  Analysis

Defendant argues the trial court erred by refusing to instruct the jury on his claim-of-right defense to common-law robbery.  Specifically, Defendant asserts the evidence demonstrated his honest belief that he was entitled to the $150 he took from Wilson as compensation for yardwork Defendant performed at Wilson's house.  In Defendant's view, this evidence negated the State's showing that Defendant possessed the intent to commit common-law robbery.  Further, Defendant contends the trial court improperly assessed the strength of this defense rather than allowing the jury to decide whether the evidence established felonious intent.  We disagree.

### A.  Standard of Review

Properly preserved arguments "challenging the trial court's decisions regarding jury instructions are reviewed *de novo*, by this Court."  *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).  "Under a *de novo* review, [this Court] 'considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.'"  *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Here, Defendant preserved his right to appeal the trial court's denial of his proposed instruction by requesting the instruction at the charge conference and renewing his request after the instructions were presented to the jury.  Therefore, we review this issue de novo.  *See Osorio*, 196 N.C. App. at 466, 675 S.E.2d at 149.

### B.   Felonious Intent & Claim-of-Right Defense

"It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988). "Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id.* at 171, 200 S.E.2d at 191.

For a defendant to be found guilty of common-law robbery:

> [T]he State was required to prove . . . (1) [t]hat the defendant took the property from the person [] or in his presence . . . ; (2) that the defendant carried the property away; (3) that [the owner] did not voluntarily consent to the taking and carrying away of the property; (4) that at the time the defendant intended to deprive [the owner] of its use permanently; (5) that the defendant knew he was not entitled to take the property; and (6) that the defendant used force or threatened immediate force or the use of force to obtain the property.

*State v. Harris*, 14 N.C. App. 478, 481, 188 S.E.2d 632, 634 (1972).

Common-law robbery is a specific intent crime, requiring "[a] taking with 'felonious intent' [as] an essential element . . . [making it] prejudicial error for the court to charge that defendant may be convicted of such offense[] where the taking

was without felonious intent." *State v. Poole*, 154 N.C. App. 419, 425–26, 572 S.E.2d 433, 438 (2002) (citing *State v. Chase*, 231 N.C. 589, 590–91, 58 S.E.2d 364, 365 (1950)). If a defendant takes property that belongs to him and he is entitled to possess, the taking may not be "unlawful." *See Harris*, 14 N.C. App. at 481, 188 S.E.2d at 634. A claim-of-right defense, therefore, negates the felonious intent required for common-law robbery because a defendant who forcibly takes property under a bona fide claim-of-right lacks the necessary intent to steal. *See State v. Spratt*, 265 N.C. 524, 526, 144 S.E.2d 569, 571 (1965). North Carolina recognizes a "claim of right" defense, which states that "[a] defendant is not guilty of robbery if he forcibly takes personal property from the actual possession of another under a bona fide claim of right or title to the property[.]" *Id.* at 526, 144 S.E.2d at 571; *State v. Cox*, 375 N.C. 165, 172, 846 S.E.2d 482, 487 (2020) (reaffirming in North Carolina "the right of a party to engage in 'self-help' and to forcibly take personal property from the actual possession of another under a bona fide claim or right to the property").

A trial court should instruct the jury on a claim-of-right defense when the alleged debt involves a specific amount because such facts can create a direct conflict in the evidence as to felonious intent. *See State v. Brown*, 300 N.C. 41, 50–54, 265 S.E.2d 191, 197–99 (1980) (holding that the defendant's specific claim to a $300 debt supported a jury instruction on his theory of non-felonious intent and that the trial court erred by failing to give a claim-of-right instruction). A debt is specific "when

the amount . . . has been fixed by agreement or if it can be exactly determined by the application of rules of arithmetic or of law." *Baillie Lumber Co. v. Kincaid Carolina Corp.*, 4 N.C. App. 342, 351, 167 S.E.2d 85, 91 (1969). If the defendant asserts a right to an uncertain amount of money, however, the court may decline to give the instruction. *See State v. Oxner*, 37 N.C. App. 600, 604, 246 S.E.2d 546, 548 (1978).

"In deciding whether a defendant is entitled to the delivery of a requested jury instruction, we . . . determ[ine] 'whether each element of the defense is supported by the evidence, when taken in the light most favorable to defendant.'" *State v. Hooper*, 382 N.C. 612, 622–23, 879 S.E.2d 549, 556 (2022) (quoting *State v. Mercer*, 373 N.C. 459, 462, 838 S.E.2d 359, 362 (2020)). "[W]here the defense . . . or the evidence develops no direct issue or contention that the taking was under a bona fide claim-of-right or was without any intent to steal, 'felonious intent' may be simply defined as an 'intent to rob' or 'intent to steal.'" *State v. Simpson*, 299 N.C. 377, 384, 261 S.E.2d 661, 665 (1980) (citing *State v. Mundy*, 265 N.C. 528, 529, 144 S.E.2d 572, 574 (1965)).

Here, Defendant exercised his constitutional rights not to present evidence. The record does not show that Defendant had a legitimate claim to the $150 he took from Wilson's wallet after knocking him to the ground. The evidence shows Defendant performed some yardwork prior to the incident but fails to show Wilson owed a specific debt to Defendant. *See Hooper*, 382 N.C. at 628, 879 S.E.2d at 559; *Baillie Lumber*, 4 N.C. App. at 351, 167 S.E.2d at 91. Wilson testified that he neither requested Defendant's services nor agreed to any specific compensation. In the light

most favorable to Defendant, he was at most entitled to the value of a $29 phone, which does not justify taking a substantially greater sum by force. *See Poole*, 154 N.C. App. at 425, 572 S.E.2d at 438.

Furthermore, the circumstances of the offense, including Defendant's flight from the scene, undermine any assertion of bona fide entitlement. *See State v. Montgomery*, 291 N.C. 91, 103, 229 S.E.2d 572, 580 (1976) (citing *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 698 (1973)) ("Flight from the scene of a crime does not create a presumption of guilt but it is a circumstance . . . show[ing] a consciousness of guilt on the part of the defendant."). The trial court correctly determined that the claim-of-right instruction was not warranted. *See Hooper*, 382 N.C. at 628, 879 S.E.2d at 559. Because the evidence did not support a bona fide claim-of-right, the trial court properly declined to give Defendant's requested jury instruction. *See Cameron*, 284 N.C. at 171, 200 S.E.2d at 191. Therefore, we discern no error.

## V. Conclusion

In sum, the evidence failed to show Defendant possessed a bona fide entitlement to support a claim-of-right defense. Accordingly, the trial court did not err in declining to instruct the jury on a claim-of-right defense.

NO ERROR.

Judges ARROWOOD and STADING concur.

Report per Rule 30(e).