## STATE *v.* ROBERT CHILDERS.

Upon the trial of an indictment for larceny: *It was held,* that it was not error in the court below to charge the jury, "That all the evidence introduced (the defendant having introduced no evidence) was intended by the State's attorney to prove to them that the defendant feloniously stole, took and carried away, the money of A. R & Son, charged in the bill of indictment, and that was the question for them to determine; that if the evidence satisfied them that he did, then their verdict should be 'guilty;' but if the evidence did not so satisfy them, then their verdict should be 'not guilty.'"

INDICTMENT for LARCENY, tried before *Furches, J.,* at Fall Term, 1875, of WILKES Superior Court.

It was in evidence that there was a firm engaged in merchandizing in the town of Wilkesboro, under the name and style of "A. Rosseau & Son." The store honse was on a corner and a door opened on each street.

J. O. Rosseau testified, that he, one Woodruff, the defendant and another person were in the store, when he, the witness went out at the west door to buy some wheat, and directly Woodruff, who was his clerk, and the other person came out of the store and went to the lumber room, and left no one in the store except the defendant. He saw several persons on the porch beyond the door on the south side of the store house. He remained in front of the door on the west side, where he could see the south door, and that no one was in the store after Woodruff left, except the defendant, until he returned. He remained out about six or eight minutes after Woodruff left, when he stepped in at the west door and defendant was either standing in or in the act of stepping out at the south door. Soon after going in he went to the money draw and found that several dollars of fractional currency were missing. After making inquiry he suspected that the defendant took the money, and he thereupon called the defendant from off the porch back into the counting room, and at the same time called

in one McLean and stated to the defendant that he had missed some money and had reason to think that he took it, and would not be satisfied until he searched him. The defendant said he did not have the money. Rosseau insisted on his being searched. The defendant at first refused, and said after being asked, that he had but one dollar, and that he too, did not know how much he had. That he left home with $2.50, and had been spending some that day.

Rosseau then called in the sheriff and others ·and stated what was the matter, and sat down on the head of the bed, the defendant sat near the foot of the bed. While sitting there several persons were standing aroun l, near the defendant, and the Sheriff told him that he was under arrest and must. be searched. The defendant at first refused, but not long after got up, pulled his knife and some strings out of one pocket and. threw them on the bed, and told them to search him. In the bunch of strings there was four ten-cent pieces. They searched him and found no money except these ten-cent pieces. Rosseau stated that he did not see him take the money, nor did he see him have it at any time. That he could not see the defendant from where he was, at the west door.

McLean was examined and stated that he heard defendant deny having the money. That while the defendant was sitting on the bed, he saw his right arm hanging down on his right side, his hand under his coat; at the same time he saw the bed cover move up as if the defendant was putting something under it. Four or five persons were standing around near the defendant. That he did not see the defendant take the money, nor did he see him have it at any time. Soon after the defendant got up, the witness lifted up the bed cover, where the defendant was sitting, and one Hunt exclaimed, "there is the money under the cover." Rosseau examined it and said, " there is a quarter, that is mine ; I know it because of its torn and ragged condition ; that he first refused to take it." When the money was taken out from under the cover,

the defendant said it was not his money, nor did he know any thing about it. He counted the money found under the bed cover, and that it amounted to $6.50. That it resembled the money he had lost in amount and size of bills. There was one twenty-five cent bill that he had taken from a customer not more than fifteen minutes before ; that it was torn and ragged, and he at first refused to take it, and by this circumstance could, and did swear positively that that twenty-five cent bill was his.

Woodruff, who was clerking for Rosseau, testified : That he and the other person left the store and went to the lumber room. At the time they left, the defendont started and walked toward the passage. That it was impossible for any one to have taken the money out of the drawer without either getting behind the counter or getting on top of the counter. He did not see the defendant take the money or have it at any time. He was not present at the time the defendant was searched. He heard him deny having the money.

Hunt testified as follows: That he saw McLean raise the bed cover, at which time he saw the money under the cover in a wad. Rosseau counted it, and there was $6.50. He did not see the defendant take or have the money at any time, but saw him have his hand under his coat and pull up the cover.

The Sheriff being examined, also testified : He got into the counting room after a considerable crowd had assembled, and told the defendant he must be searched. The defendant at first refused, and then consented, pulling out his knife and strings from his pocket and throwing them down on the bed. They searched but found no money upon the person of the defendant. He did not see the defendant take the money or have it at any time. There were four ten cent pieces among the strings, and the defendant had a pocket book in another pocket, but had no money in it.

The State's Attorney did not ask any one of the witnesses whether he took or put the money under the cover.

The counsel for the prisoner asked the court to charge the jury :

1. That if they believed the evidence deposed to by the witnesses, the defendant would not be guilty of larceny.

2. That if they found that the prosecutor, Rosseau, identified the twenty-five cent bill simply because it resembled the twenty-five cent bill he had at first refused to take that day, the money would not be sufficiently identified, there not being any private mark upon it, the defendant still would not be guilty.

The court declined to give the special instruction prayed for, and charged the jury :

That all the evidence introduced (the defendant having introduced no evidence,) was intended by the State's attorney to prove to them that the defendant feloniously stole, took and carried away the money of " A. Rosseau & Son," charged in the bill, and that was the question for them to determine. That if the evidence satisfied them that he did, then their verdict should be " guilty." But if the evidence did not so satisfy them, then their verdict should be " not guilty."

The jury rendered a verdict of guilty, and thereupon the defendant moved for a new trial. The motion was overruled by the court and judgment pronounced, whereupon the prisoner appealed.

*M. L McCorkle*, for the prisoner.
*Attorney General Hargrove*, for the State.

PEARSON, C. J. This is a clear case of larceny. There is no error in the charge of his Honor. We find no error in the record.

This will be certified to the end, &c.

PER CURIAM. Judgment affirmed.